### STATE v. JOHNSON.

No. 288.   Opinion Filed May 6, 1908.

(96 Pac. 26.)

1.   COURTS—Appellate Jurisdiction—Submission by Governor to Supreme Court for Opinion—Conviction of Crime Requiring Punishment of Death.   Wilson's Rev. & Ann. St. 1903, sec. 5588, 5589. provide that, immediately after a conviction requiring a judgment of death, there

shall be transmitted to the Governor a statement of the conviction and judgment and of the testimony given at the trial, and that the Governor may thereupon require the opinion of the judges of the Supreme Court, or any of them, upon the statement so furnished. Held that, where such statement is submitted to the court for an opinion, the case is not in the Supreme Court as a suit upon which the judgment may be affirmed or reversed.

2. PUNISHMENT—Murder—Plea of Guilty—Submission to Jury. Under Wilson's Rev. & Ann. St. 1903, sec. 2174, providing that on an indictment for murder, where there is a plea of guilty, the court shall determine the punishment. it is the duty of the court on such a plea to fix the punishment, without submission of that question to the jury.

3. SAME—Proceedings on Plea of Guilty—Irregularity. Defendant in an indictment for murder, having refused to plead thereto, the clerk was instructed by the court to enter a plea of not guilty, whereupon both parties announced ready for trial, and a jury was duly impaneled, and the county attorney made his opening statement. Defendant's counsel then announced that defendant desired to plead guilty, and defendant, on inquiry by the court, stated that he wanted to plead guilty, and stated further to the jury that he did plead guilty. Thereupon the court instructed the jury to determine the punishment to be inflicted, and the verdict found the defendant guilty as charged, and fixed his punishment at death. No evidence was received as to his sanity, nor was he cautioned as to the effect of his plea. Held, that such proceedings were so irregular that it cannot be said that defendant was convicted according to law.

(Syllabus by the Court.)

Will Johnson pleaded guilty to an indictment for murder, and the trial judge certified a statement of the proceedings, conviction and judgment to the Governor, who submits the same to the Supreme Court for its opinion.

March 26, 1908, there was returned by the grand jury into the district court of Pottawatomie county, Okla., its indictment, wherein Will Johnson, the above- named defendant, was charged with the crime of murder, alleged to have been committed on the 23d day of January, 1908, upon the person of Mary Cuppy; defendant being charged with having beaten her to death with a piece of two-inch plank and an ax handle. Defendant was arrested on March 27, 1908, entered a plea of not guilty, and his case was set for trial on April 3, 1908. March 30, 1908, on it being made to appear to the court the defendant was without funds to employ counsel, the court appointed C. G. Pittman, an attorney of

that bar, to defend him. April 4, 1908, the case not having come
to trial, it was reset for April 6, 1908. Defendant withdrew
his plea of not guilty, and his counsel filed a demurrer to the in-
dictment, which was by the court overruled; no exception being
saved thereto. On the same day defendant filed a motion for a
continuance, setting up the fact that the indictment in the case
was returned on the 26th day of March, 1908, and to that date
to wit, April 6, 1908, "defendant has not had a reasonable time
within which to prepare for trial, and at this time cannot safely
proceed to trial for want of material testimony which he has been
unable to procure." This motion was overruled, to which de-
fendant reserved no exception. Thereupon he was again called
upon by the court to plead to the indictment, and, refusing to do
so, the clerk was by the court instructed to enter a plea of not
guilty. Whereupon both parties announced ready for trial, and
a jury was duly empaneled, and the county attorney, V. R. Big-
gers, Esq., made his opening statement. Whereupon the follow-
ing proceedings took place:

"Mr. Pittman: The defendant at this time desires to with-
draw his plea of not guilty, and enter a plea of guilty. Mr. Big-
gers: If the court please, I doubt—I would rather object to his
withdrawing his plea at this time. Mr. Pittman: He desires to
plead guilty at this time. The Court: Have the defendant stand
up. What do you want to do in this case? Will Johnson: Plead
guilty. The Court: Do you want to plead guilty to the jury? Will
Johnson: Yes, sir. The Court: Do you want to state to the jury
why you plead guilty to this charge? Will Johnson: Yes, sir.
The Court: And you make your statement to jury what you
want to do? Will Johnson: Sir? The Court: And you make
your statement to the jury what you want to do? Will Johnson.
Gentlemen of the jury, I plead guilty."

Thereupon the court delivered the following instructions to
the jury:

"Gentlemen of the jury, this is an action wherein the state of
Oklahoma prosecutes Will Johnson on a charge of murder, re-
turned by the grand jurors of Pottawatomie county in the form of
an indictment. The indictment has been read to you, and the
opening statement of the counsel for the prosecution made, after

which the defendant has in open court and to you entered a plea of guilty. You are instructed, gentlemen of the jury, that, the defendant having entered a plea of guilty of murder, there are two grades of punishment that may be inflicted: The first punishment is by death; the second is by confinement in the state penitentiary for life. It is now, gentlemen, for you to say by your verdict what the punishment shall be. Two forms of verdict will be handed to you—one imposing punishment by death, and the other imposing the punishment of life imprisonment in the state penitentiary. You will retire, gentlemen, and consider of your verdict. You are instructed that when you shall have retired to your jury room you will select one of your number as foreman, and when you have reached a verdict he will sign it as such and you will all return into court with it. You are instructed, further, that you must be unanimous in your conclusions. Unless you all agree, of course, no verdict can be returned. And now, the hour of 6:30 p. m. having arrived, court is adjourned until such time as the jury may agree upon a verdict."

The jury retired, and returned into the court its verdict, finding "the defendant, Will Johnson, guilty as charged in the indictment of murder, and fix his punishment at death."

Motion for new trial was filed for the following reasons:

"First, that said verdict is contrary to law; second, that said verdict is contrary to the evidence; third, that the court misdirected the jury in matters of law and fact arising during the course of the trial which were prejudicial to the substantial rights of the defendant."

Such motion was by the court overruled, to which defendant saved his exceptions. He thereafter filed his motion in arrest of judgment, which was likewise overruled, to which the defendant excepted. The said motions were both filed on April 7, 1908, and were considered by the court on the 14th day of April, 1908. Upon the overruling of the said motions the court, upon the consideration of the verdict rendered by the jury, pronounced its judgment and sentence as follows:

"It is therefore considered and ordered by the court that judgment be entered on the verdict of the jury in this case, and it is the judgment and sentence of this court that as a punishment of the crime which you have committed you be hanged by the neck

until you are dead, and that your execution take place within the jailyard of the county jail of Pottawatomie county, state of Oklahoma, at eleven (11) o'clock in the forenoon on Friday, May 22, 1908."

On such sentence, Wilson's Revised & Annotated Statutes of 1903 of Oklahoma require (sections 5588 and 5589) :

"The judge of a court at which a conviction requiring a judgment of death is had must, immediately after the conviction, transmit to the Governor, by mail or otherwise, a statement of the conviction and judgment, and of the testimony given at the trial. The Governor may thereupon require the opinion of the judges of the Supreme Court or any of them upon the statement so furnished."

In accordance with this the clerk of the district court made a certified statement of the conviction and judgment and the proceedings had at the trial, and the judge of said court, Hon. W. N. Maben, transmitted the same to his excellency, Gov. C. N. Haskell, of the state of Oklahoma. In accordance with the terms of said statute, the Governor has required the opinion of the judges of the Supreme Court.

DUNN, J. (after stating the facts as above). Doubtless the purpose of the framers of the statute above quoted was to give the chief executive of the state proper information upon which to base his judgment upon an application for a pardon or a reprieve, and in addition thereto, and providing a further safeguard, by making it the duty of the judges of the Supreme Court, or any one of them to give their opinion for his guide and assistance, to the end that so serious an act as the taking of a human life shall not occur without the same having the most deliberate and calm consideration of the highest executive and judicial officials of the state. The record before us, as is seen from the statement of facts and the recital of the manner and purpose for which it comes, is not filed as a suit in this court, upon which we would either affirm or reverse the judgment. It does not come in a manner required by law for such purposes. *Bailey et al. v. Territory of Oklahoma,* 9 Okla. 461, 60 Pac. 117 Yet we have given the same our

most careful and attentive consideration, and we submit herewith
for the consideration of his excellency, the Governor, the judicial
and legislative expressions which have been uttered by other
courts, text-writers and states dealing with judicial admissions
in cases of this grave character.

Greenleaf on Evidence, vol. 1 § 216, states the rule which
seems to be followed very generally by most of the courts in cases
of judicial confessions or admissions such as the one at the bar.
It is as follows:

"Confessions are divided into two classes, namely ,judicial
and extrajudicial. Judicial confessions are those which are made
before the magistrate, or in court, in the due course of legal pro-
ceedings; and it is essential that they be made of the free will of
the party, and with full and perfect knowledge of the nature of the
consequences of the confession. Of this kind are the preliminary
examinations, taken in writing by the magistrate pursuant to
statutes, and the plea of 'guilty' made in open court to an indict-
ment. Either of these is sufficient to found a conviction, even if
to be followed by a sentence of death; they being deliberately
made, under the deepest solemnities, with the advice of counsel,
and the protecting caution and oversight of the judge."

Bishop's New Criminal Procedure, vol. 1 § 795, is as follows:
"Undoubtedly a prisoner of competent understanding, duly
enlightened, has the right to plead guilty, instead of denying the
charge. Yet in proportion to the gravity of the consequence the
court should exercise caution in receiving this plea. Thus, where
one tendered it in a capital case, the judges would not accept it
till they had explained to him its serious nature, sent him back to
his cell for reflection, brought him back again into court, had the
indictment read to him a second time, and examined witnesses as
to his sanity, and whether or not promises of clemency had been
made to him. These steps are not in form taken in all cases, but
they illustrate an ever-present caution. And in some of the states
there are varying statutory and other like devices to protect de-
fendants from improvident pleas of guilty."

An inspection of the case of *Commonwealth v. Battis*, 1 Mass.
94, cited by Mr. Bishop in support of his text, shows that the de-
fendant was a negro, who was indicted for the murder of a white

girl of about 13 years of age. On being brought before the court, he pleaded guilty, whereupon the following proceedings were had:

"The court informed him of the consequence of his plea, and that he was under no legal or moral obligation to plead guilty, but that he had a right to deny the several charges, and put the government to the proof of them. He would not retract his pleas, whereupon the court told him that they would allow him a reasonable time to consider of what had been said to him and remanded him to prison. They directed the clerk not to record his pleas at present. In the afternoon of the same day the prisoner was again set to the bar, and the indictment for murder was once more read to him. He again pleaded guilty. Upon which the court examined, under oath, the sheriff, the jailer, and the justice (before whom the examination of the prisoner was had previous to his commitment) as to the sanity of the prisoner, and whether there had not been tampering with him, either by promises or persuasions, or hopes of pardon, if he would plead guilty. On a very full inquiry, nothing of that kind appearing, the prisoner was again remanded, and the clerk directed to record the plea on both indictments."

Another case, *Territory v. Miller*, 4 Dak. 173, 29 N. W. 7, was one where the defendant pleaded guilty of murder, and the following quotation from the opinion shows the caution and care exercised by the court before passing sentence:

"The court thereupon carefully warned and admonished him of the solemn consequences of such plea, and that it would be a plea of guilty of murder, and would be so entered, and not, as insisted by his counsel, a plea of some lesser crime, and further informed him that if he pleaded not guilty he could have the facts passed upon by a jury, who might find him guilty only of the lesser offense, or not guilty of any offense. The defendant's counsel excepted to these admonitions, and, upon the court asking defendant whether he pleaded guilty or not guilty to the charge of murder as charged in the indictment, insisted that the court should ask the defendant whether he pleaded guilty or not guilty. The court, however, renewed the interrogatory, 'do you plead guilty or not guilty to the charge of murder as charged in the indictment?' to which defendant replied, 'Guilty.' The court thereupon directed that the plea of guilty be entered to the charge of murder as set out in the indictment. Upon the sugges-

tion of the district attorney, and against the objection of the defendant's counsel, the court subsequently, in the presence of the defendant and his counsel, and before proceeding to judgment, examined several witnesses for the purpose of informing itself as to the nature and circumstances of the offense, from all which it appeared, as, indeed, was freely admitted, both then and upon the argument in this court, that the crime was one of very great atrocity; the defendant having confessed, and being abundantly corroborated by other evidence, that during the temporary absence of his employer he had murdered his wife and infant son with an ax after they had retired to bed, and that the motive of the crime was the plunder of the cash box kept in Mrs. Snell's bed room."

Another case of the same class and character is *People v. Lennox,* 67 Cal. 113, 7 Pac. 260, wherein it will be observed that the court, upon a plea of guilty in a case of this character, examined 30 witnesses to ascertain the grade of the offense:

"The defendant pleaded guilty. Thereupon the court proceeded to hear evidence for the purpose of fixing the degree of the crime. Witnesses were examined, as well those offered by the defendant as for the prosecution—some 30 in all. After hearing the evidence, the court fixed the degree of the crime to be murder in the first degree, and set September 11, 1884, as the day on which the punishment should be determined. On that day the court, referring to section 190 of the Penal Code and to the testimony which had been taken, declared to the defendant that the discretion to be exercised by the court as to whether the punishment should be death or imprisonment for life was the same as that 'from the evidence in this case I can find no circumstances that' from the evidence in this case I can find no circumstances of mitigation, but many of aggravation. The fact that your passions were inflamed with strong drink can furnish no extenuation. I must therefore adjudge that you be taken hence by the sheriff of this county to its county jail, where you will be by him retained until at a time and place to be hereinafter determined by the court you will be hanged by the neck until you are dead.' "

A rather unusual case from Illinois (*Gardner v. State,* 106 Ill. 76) was one wherein a German, unfamiliar with the English language, was charged with murdering a woman at whose house he was stopping. On being brought before the court, and without

counsel assigned him, he pleaded guilty to the charge. The court thereupon interrogated him and examined him through an interpreter accepted his plea of guilty and sentenced him to be hanged. The Supreme Court on this matter said:

"We have no doubt the accused understood that he was charged with the killing of the deceased, and also that he did not wish to deny that fact; yet at the same time we think it highly improbable that he understood the difference between a charge of murder and a mere charge of taking life, or that one might be proved guilty of killing another and yet not be guilty of any offense at all, or at least of the offense of murder. Even admitting the court would be justifiable in entering a plea of guilty upon admissions thus obtained (which we have just seen it would not), it is clear the admission of the accused in this case that he killed the deceased, without a more satisfactory account of the attending circumstances, was not sufficient to authorize the entry of that plea. The killing, as is well understood, standing alone, does not constitute the crime of murder, but rather a single link in the chain of testimony to establish that crime."

In another case, which arose in Missouri (*State v. Stephens,* 71 Mo. 535), the court speaking through Sherwood, C. J., quotes with approval the following from some of the older authorities upon the care and regard that should be had by the trial court in acting upon a plea of guilty by a defendant in felony cases:

"Courts have always been accustomed to exercise a great degree of care, in receiving pleas of guilty in prosecutions for felonies, to see that the prisoner has not made his plea by being misled, or under misapprehension or the like. Thus it is said by Archbold in regard to the point being discussed: 'If, instead of pleading not guilty, the defendant says that he is guilty, this is a confession of the offense, which subjects him precisely to the same punishment as if he were tried and found guilty by verdict. But as defendants often imagine that, by pleading guilty, they are likely to receive some favor from the court in the sentence that will be passed upon them, the judge very frequently undeceives them in that respect, and apprises them that their pleading guilty will make no alteration in their punishment. If, however, they still persist in their plea of guilty, it is then recorded.' etc. 2 Archb. 334. And Hawkins says: 'Where a person, upon his arraignment , actually confesses himself guilty, or unadvisedly dis-

close the special manner of the fact, supposing that it did not amount to felony, where it doth, yet the judge upon probable circumstances that such confession may proceed from fear, menace, or duress, or from weakness or ignorance, may refuse to record such confession and suffer the party to plead not guilty.' 2 Hawk. P. C. 469."

The danger of a court without due consideration passing upon a plea of guilty and rendering a judgment thereon was conceived by legislatures of at least two states in the Union, Michigan and Texas, to be so great that they passed special statutes regulating the attention that should be given by the court to this matter. Section 9558, 2 How. Ann. St. Mich., is as follows:

"The people of the state of Michigan enact, that whenever any person shall plead guilty to an information filed against him in any circuit court, it shall be the duty of the judge of such court, before pronouncing judgment or sentence upon such plea, to become satisfied, after such investigation as he may deem necessary for that purpose, respecting the nature of the case, and the circumstances of such plea, that said plea was made freely, with full knowledge of the nature of the accusation, and without undue influence. And whenever said judge shall have reason to doubt the truth of such plea of guilty, it shall be his duty to vacate the same, direct a plea of not guilty to be entered, and order a trial of the issue thus formed."

The Texas statute is found under articles 554 and 555 of their criminal procedure act, as follows:

"If the defendant plead guilty he shall be admonished by the court of the consequences; and no such plea shall be received unless it plainly appear that he is sane, and is uninfluenced by any consideration of fear, by any persuasion, or delusive hope of pardon prompting him to confess his guilt. Where a defendant in a case of felony persists in pleading guilty, if the punishment of the offense is not absolutely fixed by law, and beyond the discretion of the jury to graduate in any manner, a jury shall be impaneled to assess the punishment, and evidence submitted to enable them to decide thereupon."

And wherever the trial courts in these states have to any extent departed from these provisions the reported cases we have examined show the appellate courts have reversed the causes and remanded them for trial. We have no such statute to control

the discretion of the courts in this state, but the authorities above cited are sufficient to indicate the policy of the law in the absence of such direct requirements.

In his letter transmitting this record Judge Maben states:

"I am able to send you a full statement of the case and all of the proceedings; but there is no evidence, for the reason that the defendant, after a jury had been selected, entered a plea of guilty, or a judicial confession, to the jury."

The record before us does not disclose that the plea in this case was offered and accepted, as indicated in the language of Mr. Greenleaf, "under the deepest solemnities, with the advice of counsel, and the protecting caution and oversight of the judge," nor with the high degree of care and caution required, as indicated by Mr. Bishop, "in proportion to the gravity of the consequences."

St. Okla. par. 2174, § 255, under the head of "Crimes and Punishments," provides:

"Every person convicted of murder shall suffer death, or imprisonment at hard labor in the territorial penitentiary for life, at the discretion of the jury. Upon trial of an indictment for murder, the jury, if they find the defendant guilty, must designate in their verdict whether he shall be punished by death or imprisonment for life at hard labor, and the' judgment of the court shall be in accordance therewith. But upon a plea of guilty the court shall determine the same."

It will be observed in the case at bar that the defendant stated to the jury. "Gentlemen of the jury, I plead guilty;" that this was the only statement which the jury had upon which to predicate its verdict; that upon this, and this alone, it found defendant guilty and fixed his punishment at death; and the court, in rendering its judgment, based it, not upon the plea, but upon the verdict of the jury. It will be observed from the statute that upon a plea of guilty the court, and not the jury, shall determine the punishment. The function of the jury is to find from the evidence and facts adduced before it the final conclusion of guilt or innocence; but when the prosecution asserts guilt, and the defendant admits it, and his admission is accepted, there is no duty for

a jury. Its function is over. Then it is the duty of the court attaches. And now this record is before us, and we are called on to say whether or not the formalities of the law essential to the taking of human life have been observed.

We have no power to reverse this judgment, as no cause is before us, but we are of the opinion that there are such irregularities disclosed by the record that we cannot say that the defendant. was convicted according to the forms of law.

All the Justices concur.