GEORGE MULLEN et al. v. STATE.

No. A-5239.   Opinion Filed Nov. 18, 1924.

(230 Pac. 285.)

(Syllabus.)

1.   **Judgment and Sentence—Effect of Plea of Guilty.** In a criminal action a defendant has the right to plead guilty, and the effect of such a plea is to authorize a judgment of conviction and imposition of punishment as prescribed by law.

2. **Arraignment and Pleas—Permission to Withdraw Plea of Guilty Discretionary with Court.** The granting or denying of permission to withdraw a plea of guilty either before or after judgment, and to substitute a plea of not guilty, is a matter within the sound discretion of the trial court. In capital cases such discretion should be liberally exercised in favor of life and liberty.

3. **Same—Plea of Guilty to Be Voluntary after Defendant Advised of Rights and Consequences.** A plea of guilty should be entirely voluntary, and should be made by one competent to know the consequences thereof, and should not be accepted until after the defendant has been fully advised by the court of his rights and the consequences of his plea.

4. **Trial—Right to Be Heard by Counsel not Limited to Time of Trial.** The constitutional right to be heard by counsel is not limited to the right to be heard by counsel at the time of the trial. Every person accused of felony is entitled to the benefit of counsel at every stage of the proceeding, whether imprisoned or admitted to bail.

5. **Appeal and Error—Harmless Error—Denial of Constitutional Right as a Ground for Reversal.** Where it appears on appeal that a defendant has been denied a right guaranteed by the Constitution, such showing requires a reversal, unless the record clearly shows that the right was waived, or that no injury could have resulted to the accused by reason of such denial.

6. **Arraignment and Pleas—Pleas of Guilty Held not to Have Been Entered Voluntarily and Understandingly.** Where two defendants accused of murder were arraigned without counsel and the court did not inform them that, in case they were tried by a jury and found guilty of murder, the jury in its discretion would have the right to decide whether the penalty to be imposed should be death or imprisonment for life, and that by pleading guilty they waived the right to have a jury exercise its discretion as to that matter, it cannot be said that their pleas of guilty were entered voluntarily and understandingly.

7. **Appeal and Error—Abuse of Discretion in Refusal to Set Aside Judgment and Sentence of Death Pronounced on Plea of Guilty.** The law favors trials on the merits, and, if the discretion of the trial court is abused in refusing to vacate and set aside judgment and sentence of death, pronounced upon a plea of guilty, and grant a new trial, the judgment on appeal will be reversed.

Appeal from District Court, Carter County; W. F. Freeman, Judge.

George Mullen and Estill Perkins were convicted of murder, and they appeal. Reversed and remanded.

The information in this case filed in the district court of Carter county, June 2, 1924, charges that the defendants, George Mullen and Estill Perkins, did in Carter county, on or about the 25th day of May, 1924, kill and murder one W. M. Cox, by shooting him with a shotgun.

The record shows that these defendants were arrested Sunday evening, June 1st, about 5 o'clock; that they were taken the next morning before an examining magistrate and waived preliminary examination, but were not represented by counsel. On the same day the information was filed in the district court and the defendants arraigned. The court informed them of their right to have counsel to represent them, and that if they were not able to employ counsel the court would appoint counsel if they so desired. To which the defendant Perkins replied: "This is my first time; I don't know." The defendant Mullen made no answer. They were then asked by court if they wanted a lawyer to represent them in this case. Each answered, "No, sir." The county attorney then read the information. They were then each asked by the court: "What is your plea, guilty or not guilty?" Each answered, "Guilty." Thereupon the court made the following statement:

"Do you know the consequences of your plea of guilty? It is provided by the laws of this state that when a man commits murder, upon his plea of guilty or when he is proven to be guilty, he may be electrocuted, or, it may be, if the court doesn't see fit to inflict so severe a punishment, then it may be reduced to a term for life in the state penitentiary. In view of these grave consequences of your plea, do you still desire to enter your plea of guilty?"

"The Defendant Mullen: Yes, sir.

"The defendant Perkins: Yes, sir.

"By the Court: To defendant Perkins: How old are you? A. Nineteen.

"To defendant Mullen. How old are you, Mullen? A. Nineteen.

"By Mr. Hodge, County Attorney: I thought you said, George, last night, that you were 17? A. I state now that I reckon I am 19 years old.

"By the Court: It is an enormous thing, boys. It comes to the court, information—you plead guilty of the charge that you went up to this old man's store, his place of business, the room where he slept, I believe, wasn't it, and out there in the dark, after night, hidden and protected by the darkness on the outside, called this old man up and killed him. Is that so?

"The Defendant Mullen (crying): I didn't mean to kill him.

"By the Court: But you shot him?

"The Defendant Mullen: I shot through the door, but I didn't go to do it. I was drinking, and I didn't have my right mind."

The court then directed the sheriff to take the boys back to jail and to return them into court in 48 hours, and stated:

"I shall not pronounce judgment until I give them every possible right they have under the law."

On June 4th, the defendants being present, the court stated:

"Let the record show, Mr. Reporter, that the court this morning appointed Judge R. Brett to represent these defendants in the further proceedings in this case. The defendants will stand up.

"Mr. Mullen and Mr. Perkins, when you were in court two days ago, you expressed the desire and did enter your plea of guilty to the charge of murder, and the court at that

time admonished you as to the consequences of a plea of guilty to a charge of that character, that your punishment would either have to be death or life imprisonment; but the court thought it would be well to give you plenty of time, and did give you 48 hours to consider as to whether or not you desired to plead guilty under these conditions. What is your desire now? Do you still desire to enter your plea of guilty?

"The Defendant Mullen: Yes, sir.

"The Defendant Perkins: Yes, sir."

Thereupon Judge Brett, counsel for the defendants, made a statement asking for leniency and concluded by asking that life imprisonment be imposed as the punishment.

Thereupon the court directed the defendants to sit down and in a general statement reviewed the case, concluding his remarks by saying:

"Stand up, boys, Mr. Mullen and Mr. Perkins, you have heretofore entered your plea of guilty to the charge of murder, and when called upon by the court to-day, as to whether or not you still insisted on entering that plea, you answered that you did, and again to-day you have entered your plea of guilty to the charge of murder. The court, after having for 48 hours seriously and restlessly and without sleep—because I couldn't sleep with the weight of this responsibility and this burden on me—finds that it is the judgment of this court that you be punished by death, each of you. I shall not pronounce sentence now. Mr. Sheriff, you will take them back to prison."

On June 7th, the defendants being present in person and by their counsel, Judge Brett, the following proceedings were had:

"By the Court: In the discharge of official responsibilities, there comes a time when a judicial officer properly feels a very great and grave responsibility of the duties that are incumbent upon his official position. In moments of this character of seriousness, ladies and gentlemen, I cannot help to feel, and am disposed so to do, to invoke divine guidance in

the discharge of a problem and duty of such weight and seriousness. Therefore I will ask this audience to arise, and Dr. Davidson will lead us in a word of divine pleading.''

After the invocation by Dr. Davidson, Guy H. Sigler and J. E. Williams, of the Ardmore Bar, asked to be entered as attorneys of record for the defendants:

''By Mr. Sigler: If the court please, the defendants at this time wish to have their plea of guilty withdrawn and to enter their plea of not guilty.

''By the Court: Which motion will, by the court, be overruled.

''By Mr. Sigler: If the court please, the defendants at this time object to further procedure and sentence in this case, for the reason that, under the rules of this court, this case would belong in division No. 2 of this court, over which Judge Asa E. Walden has charge as judge, and the defendants now offer and ask that the rules of this court be marked as 'Defendants' Exhibit A' and made a part of the record in this action.

''By the Court: The request as to the marking of the rules of this court and that the same be made a part of this record will be granted. The objection as to the jurisdiction of this court to pronounce sentence in this case will be overruled.

''By Mr. Sigler: We would like for the record to show that Judge Walden is now in Ardmore and has been in the district court since the case was filed.''

Evidence was offered to show that the defendants were taken from the office of the committing magistrate direct to the district court; that on the same day upon arraignment they both pleaded guilty.

Judge Walden, called as a witness, testified that no order had ever been made by him transferring this case from his division to the division presided over by Judge Freeman. The court overruled the objections to the jurisdiction of the court to render judgment upon the pleas entered.

"By Mr. Williams, Counsel for Defendants: If the court please, we ask leave to withdraw the plea of guilty entered by the defendants, and we would like to put the defendants and each of them on the witness stand to show that no copy of the information or a list of the witnesses had ever been furnished to the defendants, and to prove that they did not understand the nature of the charge against them.

"By the Court: That will be denied, because this court very fully explained to them on their first appearance the nature of the charge, and again, on their second appearance, 48 hours thereafter. (Exception reserved.)

"By the Court: Before formally pronouncing sentence upon these two young defendants, the court desires to make a few observations upon this case and the consequences of this case, and of its probable psychological effect upon the citizenship of this county, and not only this county, but in these days of radio and of the press and other means of communication it will have its effect throughout the state."

Here follows an extended address to the audience, at the close of which the record is as follows:

"By the Court: Mr. Perkins, stand up. You have been legally charged by information filed in this court with the crime of murder. To that charge you have entered your plea of guilty. You and your companion in crime have detailed the story that you deliberately planned with each other to go down there and rob this old man, and for that purpose took along with you a shotgun, and when you got there conditions arose so that your companion in your presence, while you were standing guard, deliberately shot and killed him. As provided under the statutes of this state, hard as it is for me to pronounce that sentence, young man, based upon your plea of guilty and the charge of this information, it is the sentence of this court that you pay the penalty of death as is made and provided under the laws of this state in such cases, and that execution of sentence shall be between the hours of 6 a. m. and 2 p. m., on Friday, the 29th day of August, next; and may God have mercy upon your soul.

"George, stand up.

"The Defendant Mullen: I want to say to you people that if I had it to do over again nothing in this world could make me do it. It was whisky that made me do it. I didn't intend to kill that man. I didn't realize I had killed a man until the next morning. I told you the story as straight as I could remember it. Judge, I ask for mercy, that is all.

"By the Court: You have been legally charged by information filed in this court, George, with having killed old man Cox, thereby becoming subject to the charge of murder. To this charge, you have entered your plea of guilty. You stated to the officers and the court the conditions under which that murder was committed, and I would that I could say and see in your heart that you are innocent of so grave a charge; but it is my duty, and the gravest one, to pronounce sentence upon you, which I now do. It is the sentence of the court, for the crime to which you have entered your plea of guilty in this court, that you shall pay the penalty of death in the manner and form in which it is provided by the statutes of this state, and that the execution of this sentence shall be between the hours of 6 a. m. and 2 p. m., on Friday, the 29th day of August, 1924; and may God have mercy upon your young soul."

On June 9th, motion for new trial and rehearing was filed on the following grounds:

"(1) That the court erred in refusing to permit the defendants to withdraw their pleas of guilty.

"(2) That the court erred in overruling the objection to the jurisdiction of the court as stated in the objections offered.

"(3) Because the court, by statements not under oath constantly made in the record, prejudiced the defendant's case.

"(4) Errors of law occurring at the hearing and excepted to by the defendants."

Which motion was by the court on the following day overruled and exception allowed.

Sigler & Jackson and Brown, Brown & Williams, for plaintiffs in error.

George F. Short, Atty. Gen., and G. B. Fulton, Asst. Atty. Gen., for the State.

DOYLE, J. (after stating the facts as above). The plaintiffs in error, George Mullen and Estill Perkins, having been sentenced to suffer death upon the charge of murder, have appealed to this court, and seek a reversal:

First, because the court erred in refusing to permit the defendants to withdraw their pleas of guilty.

Second, because the court erred in overruling the motion of the defendants for a new trial.

It appears that the homicide was committed May 25, 1924. Plaintiffs in error, each 19 years of age, were arrested June 1st, and placed in the county jail at Ardmore. The following day they were taken before a justice of the peace, and each waived preliminary examination. They were then taken to the courtroom of the district court. In the meantime the information was filed.

Thereupon the following proceedings were had:

The Court: "Boys, you are brought into this court on a very serious charge, that of murder. Now, the court takes this occasion to admonish you of your rights in the matter. You have a right to have counsel to represent you before this court, if you want it, and if you are not able to employ counsel it is the duty of this court to appoint counsel and the state will pay for it and see that you are properly represented before this court, and the court will do it for you if you so desire. Do you want a lawyer to represent you in this case?"

The defendants each answered, "No, sir."

The Court: "Then, Mr. Hodge, you may proceed."

The defendants were then called upon to plead, and each entered a plea of guilty.

The court then stated. "Do you know the consequence of your plea of guilty? It is provided by the laws of this state that when a man commits murder, upon his plea of guilty or when he is proven to be guilty he may be electrocuted, or, it may be, if the court doesn't see fit to inflict so severe a punishment, then it may be reduced to a term for life in the state penitentiary. In view of these grave consequences of your plea, do you still desire to enter your plea of guilty?" To which each defendant answered, "Yes, sir."

The court then directed the sheriff to take the defendants back to jail and to return them into court in 48 hours. On June 4th, the defendants being present, the court appointed Judge R. Brett as counsel for the defendants. The court then asked the defendants, "Do you still desire to enter your plea of guilty?" To which each answered, "Yes, sir."

Thereupon Judge Brett, as counsel for the defendants, made a statement asking for leniency and concluded by asking that life imprisonment be imposed as the punishment.

The court stated that he would not pronounce sentence at that time, and adjourned court until June 7th, and the defendants were taken back to jail.

On June 7th, before the judgments were pronounced, Guy H. Sigler and J. E. Williams, of the Ardmore Bar, asked to be entered as attorneys of record for the defendants, and it was so ordered. As counsel for the defendants they then asked leave to withdraw the pleas of guilty as entered by the defendants and asked leave to call the defendants as witnesses to show that no copy of the information or a list of the witnesses had ever been served on the defendants, and to prove that they did not understand the nature of the charge against them.

The court then said: "That will be denied because this court very fully explained to them on their first appearance the nature of the charge and again on their second appearance, 48 hours thereafter."

On the same day the court found the defendants guilty of murder as charged in the information and that they should suffer death in the manner prescribed by law and pronounced judgments accordingly.

In support of the contention of counsel for the defendants that the judgment should be set aside and a new trial ordered, it is argued that under the law of this state the defendants had the absolute right at any time before judgments were formally pronounced to withdraw their pleas of guilty and to substitute therefor pleas of not guilty.

The contention of counsel is predicated upon the provision of the Code which reads:

"The court may, at any time before judgment, upon a plea of guilty, permit it to be withdrawn, and a plea of not guilty substituted." Section 2621, Comp. Stats. 1921.

The uniform holding of this court in construing this provision of the Code has been that the granting or denying of permission to withdraw a plea of guilty, either before or after judgment, and to substitute a plea of not guilty, is a matter within the sound discretion of the trial court, and that such discretion should be liberally exercised in favor of life and liberty.

In Jenkins v. State, 6 Okla. Cr. 516, 120 Pac. 298, it is said:

"In respect to the question of discretion, courts have distinguished between the higher and lower grades of crime, and construing this section of the statute in a felony case, and especially in a capital case, if the defendant had entered a plea

of guilty without the benefit of counsel, or was influenced to enter such plea, either by his counsel, or by the prosecution, or by act of the court, he should be accorded the right of trial by jury, by permitting him at any time before judgment to withdraw his plea of guilty and substitute therefor a plea of not guilty. In such cases the refusal of a trial court to permit this to be done would be considered an abuse of judicial discretion.''

In Polk v. State, 26 Okla. Cr. 283, 224 Pac. 194, it was held:

''The law favors trials on the merits; and, if the discretion of the trial court is abused in refusing to vacate and set aside judgment and sentence of life imprisonment, pronounced upon a plea of guilty, and grant a new trial, the judgment on appeal will be reversed.''

And see State v. Johnson, 1 Okla. Cr. 154, 96 Pac. 26; Id., 21 Okla. 40, 96 Pac. 26, 22 L. R. A. (N. S.) 463; McConnell v. State, 18 Okla. Cr. 688, 197 Pac. 521; Heath v. State, 23 Okla. Cr. 382, 214 Pac. 1091.

The uniform holding of the courts is that in capital cases a plea of guilty can only be entered after the defendant has been fully advised by the court of his rights and the consequences of his plea, and, where it appears on appeal from a judgment of conviction that the defendant has been denied a right guaranteed by the Constitution, such showing requires a reversal, unless the record clearly shows that the right was waived, or that no injury could have resulted to the accused by reason of such denial.

Counsel for the defendants assert that they were denied rights guaranteed by the Constitution of the state. Section 20 of the Bill of Rights provides:

''In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed: Provided, that the venue may be changed to some other county

of the state, on the application of the accused, in such manner as may be prescribed by law. He shall be informed of the nature and cause of the accusation against him and have a copy thereof, and be confronted with the witnesses against him, and have compulsory process for obtaining witnesses in his behalf. He shall have the right to be heard by himself and counsel; and in capital cases, at least two days before the case is called for trial, he shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations of the indictment or information, together with their postoffice addresses."

A person prosecuted for a crime may waive the rights guaranteed to him by this provision of the Constitution, and the court is called on to decide whether under the facts shown in this case the defendants did or did not waive such rights.

It has been held that a constitutional right to be heard by counsel is not limited to the right to be heard by counsel at the time of the trial, but that the spirit of the provision contemplates the right of accused to consult with counsel at every stage of the proceeding.

In Polk v. State, supra, it was held:

"Under our laws every person accused of felony is entitled to aid of counsel at every stage of the proceedings, whether imprisoned or admitted to bail, and refusal of opportunity to procure such counsel amounts to a deprivation of a right essential to his safety."

The information to which the defendants were called upon to plead charged an offense for which the punishment prescribed by statute is death or imprisonment for life at hard labor. If the defendants had been permitted to consult with counsel learned in the law, before they were arraigned, they would have been informed that they had a right to be tried by a jury of 12 men, whose duty it would be to decide the question of their guilt, and that in case they were found guil-

ty of murder, the jury would have a right to exercise its discretion in fixing the punishment at death or at imprisonment for life. They would have been informed that they could not be required to give evidence against themselves. They would have been informed also that in case they pleaded guilty, such pleas would be a confession that they were guilty of murder, and thereupon the court would be authorized to find them guilty of murder without hearing any other evidence. They would have been further informed that the effect of such a plea would be, not only to waive their right to have the question of their guilt determined by a jury, but also to waive their right to have a jury, exercising its discretion in determining whether they would be punished by the infliction of the death penalty or by imprisonment for life, and that the court as the result of such waiver would have a right to impose either the death penalty or the penalty of imprisonment for life at hard labor as its discretion might dictate.

Where it appears that a defendant is thus fully advised as to his rights and as to the consequences of his plea, and that with such knowledge he deliberately enters a plea of guilty, the court is justified in accepting it, even in a capital case. But where the defendant charged with a capital offense appears before the court without counsel, and offers to enter a plea of guilty, the court, before accepting such plea, should make sure that the defendant has full knowledge of his rights, and that he fully comprehends and appreciates the serious consequences of the plea he is proposing to enter.

In this case it appears that the defendants were informed by the court that they had a right to have counsel to represent them, and that if they were unable to employ counsel it would be the duty of the court to appoint counsel for them. This right they expressly waived. But the record shows that the consequences of a plea of guilty were not explained to them

before their pleas were entered. It appears that after the pleas were entered, and before accepting the same, the court informed them that the law authorized the court to inflict the death penalty, or that of imprisonment for life.

The defendants were not informed that, in case they were tried by a jury and found guilty of murder, the jury in its discretion would have the right to decide whether the penalty to be imposed should be death or imprisonment for life, and that by pleading guilty they waived the right to have the jury exercise its discretion as to that matter.

On the record before us it cannot be said that the pleas of guilty were entered voluntarily; and understandingly. It follows that the court committed prejudicial error in refusing to permit counsel for the defendants to call the defendants as witnesses before the judgments were rendered to prove that they did not understand the nature of the charge against them.

Had the defendants been represented by counsel, they would have been informed of their constitutional right against self-incrimination and each would have been advised to assert his constitutional right to refuse to answer the questions which elicited the prejudicial facts which seem to have been considered by the trial court in determining which of the penalties provided by law should be imposed. They would also have been informed of their right to have a copy of the information and to be furnished with a list of the witnesses for the state together with their post office addresses at least two days before being called upon to plead to the information. Goben v. State, 20 Okla. Cr. 820, 201 Pac. 812, and cases cited.

No act which a court can be called upon to perform is more serious and solemn than to render a capital judgment

on a plea of guilty. To perform such a duty the judge is reconciled only by the consideration that it is not he who does it, but the law of which he is simply the minister, and for this reason in a capital case the accused should be accorded in full measure every right guaranteed by the Constitution and the statutes.

The law of the land guarantees to every one accused of crime, whether rich or poor, a fair and impartial trial. The rights of just and upright citizens are no more sacred in the eyes of the law than the rights of the poorest and meanest citizens of the state. The safeguards erected by the Constitution are intended to protect the rights of all citizens alike. They protect the rights of the guilty, as well as those of the innocent. This court cannot give its sanction to the conviction of any person accused of crime where the proceedings on which the judgment is based show the denial of a right to which the accused was entitled under the Constitution. Such judicial sanction in any case would impair, if not destroy, the efficacy of the constitutional safeguards to protect the rights of all citizens of the state. However guilty these defendants may be, they are entitled to a trial in accordance with the rules of law.

It appears that under the rules of said district court regulating the assignment of cases, this case properly belonged to division No. 2; that no order had been made by Judge Walden, presiding, transferring this case to Judge Freeman's division, No. 1. The defendants on this ground, before the judgments were rendered, objected to the jurisdiction of Judge Freeman to proceed with the case.

We deem it sufficient to say that this objection to the jurisdiction of the court was not well taken. However, we will take

could unseemly conflicts of authority among the judges be avoided, and causes and proceedings before the court be conducted and disposed of in an orderly manner. When once adopted such rules should be held binding and be enforced, except when the court, for good cause shown, in a particular case may relax them in order that justice may be done. No sufficient reason appears in the record why the rules of said district court should have been disregarded in this case.

Under the facts shown by the record, the trial court should have granted the defendants' motion for leave to withdraw their pleas of guilty and should have permitted them to enter pleas of not guilty. Denying such motion was a manifest abuse of judicial discretion.

The judgments of the lower court are accordingly reversed, and the case remanded, with direction to sustain the defendants' motion for leave to withdraw their pleas of guilty.

The warden of the penitentiary will surrender the defendants, George Mullen and Estill Perkins, into the custody of the sheriff of Carter county, who will keep them in custody pending further proceedings in this case.

MATSON, P. J., and BESSEY, J., concur.