Ex parte Pablo Resto Miranda, Petitioner.

No. 121. Argued November 13, 1939.—Decided December 1, 1939.

701

*Ciro Malatrasi, Jr.,* and *Antonio J. Amadeo,* for the petitioner; *R. A. Gómez, Prosecuting Attorney* and *Luis Janer, Assistant Prosecuting Attorney,* for the People.

Mr. Justice Travieso delivered the opinion of the Court.

The petitioner alleges in substance that on the 23rd of August of 1934, the District Attorney of San Juan filed an information against him for the crime of murder, a qualification which was lowered at the arraignment to that of murder in the second degree; that on the above date the petitioner plead guilty to the crime of which he was accused, having been sentenced immediately to imprisonment for ten years in the penitentiary at hard labor and three months in jail for the additional offense of carrying forbidden weapons; and that from that date on he has been confined in the Insular Penitentiary. As the legal basis for his release through the writ of habeas corpus whose issue he is requesting, the petitioner pleads:

"6. That at no moment from his arrest until after his imprisonment, did the petitioner have the aid of counsel, and the court at no time offered him or appointed for petitioner a defender, nor did it

advise him as to his right to be represented by counsel and in case that he could not pay for one to have one assigned him by the court.

"7. That the petitioner in no way waived his right to be represented by counsel.

"  *          *          *          *          *          *          *

"10. Your petitioner pleads that the court acted without jurisdiction for the following reasons:

"A. That the above sentence convicted petitioner for a violation of Section 201 of the Penal Code of Puerto Rico, wh'ch establishes that a violation of this Section is a felony.

"B. That in accordance with Section 205 of the Penal Code of Puerto Rico, the crime of murder in the second degree is punished with a penalty of imprisonment for not less than ten years nor more than thirty years.

"C. That at no time in the course of the proceedings of this criminal action, from the date of the imprisonment by virtue of the sentence, was the defendant given the opportunity of consulting a lawyer, he being deprived thereby of his constitutional right to consult with and be represented by a lawyer.

"D. That the petitioner has been deprived of his liberty without the observance of due process of law, since the petitioner did not have the benefit of consulting with and being advised by a lawyer.

"E. That the Judge of the District Court of San Juan who sentenced the petitioner did not advise him as required by law, to the effect that petitioner had the right to aid of counsel.

"F. That the District Court of San Juan, for the reasons set above, convicted and sentenced the defendant without having jurisdiction over the criminal proceedings or the petitioner.

"G. That when he plead guilty, petitioner did not know the nature of the offense and the consequences of his admission of guilty, since the Hon. Judge did not give him any warning with respect to this point, and petitioner was completely devoid of aid and counsel by a lawyer, relative or friend.

"H. That for the reasons set above, the detention and imprisonment of petitioner are absolutely null and void."

The petitioner having been brought before the court on the 13th of November of 1939, the Warden of the Insular Penitentiary presented the written report required by Section 476 of the Code of Criminal Procedure. In its relevant part, the report reads thus:

"INFORMATION:—The district attorney filed an information against Pablo Resto Miranda, for a crime of murder (felony) committed in the following way: the above mentioned defendant, Pablo Resto Miranda, on a date prior to the filing of this information, on or about the 16th of August of 1934, and in San Juan, Puerto Rico, within the Judicial District of the same name, then and there, in an illegal and wilful manner, with malice aforethought and a firm and deliberate intent to kill, illegally killed the human being Eugenio Cruz Martínez, whom he attacked with a razor, which is a deadly weapon, inflicting on him several serious wounds and as a result of said wounds the aforementioned Eugenio Cruz Martínez died in San Juan, P. R. the 16th of August of 1934, and said wounds were inflicted by the defendant Pablo Resto Miranda on the deceased Engenio Cruz Martínez, with the intention of killing him.

"This act is contrary to law, etc. M. Romany, District Attorney. Sworn August 23, 1934. Attest: E. López Tizol, Secretary.

"JUDGMENT:—Today August 23, 1934, and in open court, the defendant Pablo Resto Miranda appeared to be arraigned in the instant case. After the information had been read by the district attorney, he was asked by the court what pleading he desired to make, and he stated that he admitted being guilty of the crime of murder in the second degree, requesting that sentence be imposed in this very act. Therefore, considering the defendant's confession in open court, the court renders judgment declaring the defendant guilty of a crime of murder in the second degree and at his petition imposes sentence condemning him to ten years imprisonment in the Penitentiary at hard labor, crediting to him in accordance with the law the temporary imprisonment which said convict may have undergone, without costs, because of his insolvency.

"Given in open court, at San Juan, P. R., in the 23rd of August, 1934. Angel R. de Jesús, District Judge."

From the trial court's minute book it does not appear that at any moment during the arraignment and sentencing of the defendant was he represented by counsel. The Prosecuting Attorney of this Court admits, not only that the defendant lacked legal assistance throughout the proceeding, but also that Section 141 of the Code of Criminal Procedure and the Act of March 9, 1905, were not complied with, since the defendant was at no time warned of his right to be represented by counsel, nor did the court appoint him one.

At the hearing, the petitioner testified under oath, without his testimony being attacked or contradicted by the district attorney, and said:

"District Attorney: I am going to ask the defendant two or three questions with respect to this.

"District Attorney: How old are you?

"Defendant: About 26 years.

"Q. Now?

"A. Yes, sir.

"Q. The record in this case says that you appeared at the trial before the lower court and when the information for first degree murder was read you plead not guilty; and afterwards you informed the court that you would plead guilty to murder in the second degree, is that not so? Answer in a loud voice.

"A. Yes, sir.

"Q. Did you understand perfectly the information and that which it imputed to you?

"A. Yes, sir.

"Q. Then that was the reason why you informed the court that you were innocent of the crime with which you were charged and that you plead guilty of murder in the second degree? Is that so?

"A. Yes, sir.

"Q. Did someone explain to you, exert any influence or pressure so that you make that pleading or was it spontaneous?

"A. Yes, I was advised to plead guilty.

"Q. Explain to the judges all that happened with respect to these facts. What happened?

"A. Well, I was advised that as I was insolvent I could not have a lawyer so as to have a good result in this case, and therefore it was better for me to plead guilty and they would impose upon me the minimum sentence and it would be much better.

"Q. Who gave you that advice?

"A. Somebody advised me, I am not sure who he was; I do not remember if it was the district attorney.

"Q. You did not have a lawyer at any moment?

"A. No, sir.

"Q. Up to what grade did you study in school?

"A. Up to the third grade.

"Q. Can you read and write?

"A. A little.

"Q. At any time before this information, did you have to appear before a court for any reason?

"A. No sir, never, never.

"Mr. District Attorney: That is all.

"Mr. Chief Justice: Tell me, you were accused of murder in the first degree?

"A. Yes, sir.

"Q. And you plead guilty of murder in the second degree?

"A. Yes, sir.

"Q. What difference is there between murder in the first degree and murder in the second degree?

"A. Well, the d'fference is that in the second degree there is more leniency if you plead guilty.

"Q. Leniency about what?

"A. Well, as they explained to me . . .

"Q. As they explained to you, what kind of leniency? What difference is there between one and the other?

"A. I cannot, I do not know how to answer.

"Q. You do not know?

"Mr. Justice Travieso: Where were you when they gave you that advice that if you plead guilty the minimum would be imposed upon you; who gave you that advice and where were you?

"A. In the district court.

"Q. In what part of the court, before the judge or in the office of the district attorney?

"A. In an office.

"Q. Where were you, under arrest or free under bail?

"A. They took me to an office.

"Q. But you were not in custody?

"A. Yes, sir, I was in temporary custody.

"Q. Was it the marshal who gave you that advice?

"A. I am not sure, if it was the marshal or the district attorney, I do not know them.

"Q. Did you know the district attorney?

"A. No, sir.

"Q. Didn't you see him the day the information was read?

"A. Well, I saw him but I do not remember him as I have been five years in prison.

"Q. But the same person who read the information was the one who gave you that advice?

"A. Yes, sir.

"Q. The same person? So that the only advisor whom you had was the district attorney?

"A. Yes, sir."

We could have decided the case at bar by the authority of *Ex parte Hernández*, 54 P.R.R. 396, in which the violation of the defendant's right was not so grave or flagrant as in the case of the present petitioner. Hernández was arrested, accused, convicted and sentenced to twenty years' imprisonment all in less than twenty-four hours, without at any moment being represented by counsel or warned of his right to have legal assistance. The helplessness of the defendant, here petitioner, has been still greater. He was made to answer an information for murder, for which he could have been condemned to life imprisonment, without the help of counsel and without any warning as to his right to be defended by counsel; and worse still, since it is contrary to professional ethics, the only advice which the prisoner had the opportunity of receiving was that offered by the district attorney, who was precisely the only lawyer who for obvious reasons was compelled to abstain from advising him. How is it possible to believe that the one person who by reason of his office had the duty of accusing him, and because he had already accused him, must have felt morally certain of his guilt, could advise him without bias, prejudice or partiality?

In deference to the distinguished commentators and critics of the opinion rendered by this Court in *Ex parte Hernández, supra,* and ready to rectify the error if we should have committed any, we have studied anew and very carefully the only legal question involved in the present case, which we shall formulate as follows: Has a defendant accused of a felony the right to be assisted and advised by counsel at the arraignment, and to be warned of the existence of such a right in his favor, before he is required to answer or take exception to the information?

It is true that the case of *Johnson* v. *Zerbst,* 304 U.S. 458, 82 L. Ed. 1461, which was the ground for our decision in *Ex parte Laureano, supra,* had to do with a defendant who after having plead not guilty was submitted to trial without aid of counsel and without being warned of his constitutional right to have the assistance of counsel for his defense; and that in the case at bar the defendant, who neither before nor at the time of the arraignment had the assistance of a lawyer or was warned of his right to legal aid, plead guilty, making the trial unnecessary. The difference between the two cases is devoid, in our opinion, of any importance, since we are convinced that the advice and counsel of a lawyer are as necessary for a defendant before and at the time of the arraignment, as during the trial. The setting up of a hypothetical case will make our position more understandable. Let us suppose that A kills B under circumstances which at the most would justify a classification of the act as manslaughter. The district attorney accuses A of murder in the first degree. A, a layman ignorant of legal tecnicisms and of the various graduations and degrees of homicide and of the circumstances which justify or excuse a homicidal act, incapable of judging by himself the sufficiency of the information or the validity of his defense, imprisoned and separated from his relatives and friends, lacking advice of counsel, finally accepts the district attorney's advice and pleads guilty to murder in the second degree, an offense which in reality he has not committed and to which he has confessed in the midst of his helplessness as the only means of evading a sentence of life imprisonment. The intervention and assistance of a lawyer would have surely prevented the consummation of this judicial error.

It will be argued, taking as a starting point the decision of the Federal Court for the District of Georgia in the case of *Erwin* v. *Sandford, Warden,* 27 Fed. Supp. 892, that the admission of guilt made by a defendant constitutes by itself an intelligent and competent waiver of his right to be assisted

by counsel and that, therefore, when the court sentenced him without appointing him a lawyer, it did not deny him his constitutional right to aid of counsel. It seems to us very easy to distinguish the facts of the case cited and the case at bar. The defendant Erwin alleged that he had been forced to plead guilty. His petition for a writ of habeas corpus was denied in the following words:

"The evidence in this case shows that the petitioner freely and voluntarily entered a plead of guilty of the offense charged in the indictment.

"  *          *          *          *          *          *          *

"Where a person, without counsel, admits his guilt of crime and does not ask for or desire a trial, but wishes rather to plead guilty and submit himself to the mercy of the court, *and freely und voluntarily enters such plea, his conduct is a competent and intelligent waiver* of his constitutional right to assistance of counsel."

For the purpose of upholding the validity of a sentence imposed on a defendant who was not represented by counsel at the arraignment and who was not warned of his right to have legal assistance, it is not enough to say that said defendant on pleading guilty, by that sole act, waived his right to be assisted by counsel. It is the duty of the court to go beyond the simple admission of guilt and investigate whether the same was made freely and voluntarily. This the Federal Court did in *Erwin* v. *Sandford, supra,* refusing to issue the writ for the following reason set out in the district judge's opinion:

"From the evidence in this case, I find that the plea was not coerced but was freely and voluntarily made."

The rule established by the Federal Supreme Court in *Johnson* v. *Zerbst, supra,* is still more strict, since it requires, in order that the waiver of the right to be assisted by counsel be valid, that the defendant know or be informed of said right and that he waive it not only freely and voluntarily but also intelligently and competently. And it is the duty of the judge to determine if there has been an intelligent

and competent waiver of said right and to investigate the facts and particular circumstances of the case, including the personal history, experience and conduct of the defendant, seeing to it that it all appear in the record. Everything that has been set out above is in harmony with the humane policy of modern criminal law which tends to eradicate the practices of those epochs when a defendant was not permitted to testify in his own defense and he was not assigned counsel, thereby making possible the conviction of a man who found himself without money, without a lawyer, without means of summoning his witnesses and without being permitted to testify in his defense. See: *Patton* v. *United States,* 281 U.S. 276, 74 L. Ed. 854; *Hack* v. *State,* 141 Wis. 346, 45 L.R.A. (N.S.) 664.

In *Powell* v. *Alabama,* 287 U.S. 45, 77 L. Ed. 158, the Supreme Court decided that a defendant's right to be represented by counsel is in substance denied when at the arraignment he is not asked if he has a lawyer, if he can get one or if he wishes that the court appoint him one.

The Prosecuting Attorney of the Supreme Court has submitted to our consideration a recent decision of the Court of Criminal Appeals of Oklahoma, in the case of *Ex parte Barnett,* 94 P. (2d) 18, rendered on September 15, 1939. The facts of said case are very similar to those of the case at bar. The defendant Barnett, who was charged with the monstruous crime of having raped his own daughter aged ten, based his petition for a writ of habeas corpus on legal grounds identical to those adduced by the petitioner in the present case, alleging in substance: that immediately after having been arrested he was taken before the county judge and that in the preliminary investigation practiced by said judge the defendant was not represented by counsel nor was given the opportunity of obtaining one; that from here he was taken before the district judge, who sentenced him to fifty years' imprisonment, without informing him of his constitutional right to have the advice of counsel and without

asking him if he wished that the court appoint him one; that when the sheriff arrested him, he took him to jail and here told him that as he had no money to engage a lawyer, if he did not plead guilty he would probably have to remain in jail for at least a year before the trial was held, while if he plead guilty he could begin to serve his sentence immediately; and that it was following his advice that he decided to plead guilty. With the intention of proving that the defendant had waived his constitutional right "intelligently and competently", the State's attorney presented affidavits of the trial judge, the district attorney and the county sheriff, in which they stated that before the defendant had plead guilty, the judge had warned him of his right to be represented by counsel. In spite of these affidavits, the court issued the writ and decreed the defendant's liberty, relying on the opinion rendered by the same court in *Howington* v. *State,* 30 Okl. Cr. 243, 235 Pac. 931, in which it was decided:

"A plea of guilty should be entirely voluntary, and should be made by one competent to know the consequences thereof, and should not be accepted until after the defendant has been fully advised by the court of his rights and the consequences of his plea.

"  *       *       *       *       *       *       *

"The state attempts to safeguard the life and liberty of citizens, and as one of the steps in that direction secures to them, if prosecuted for crime, the constitutional right to be heard by counsel, which includes the right of accused to consult with counsel at every stage of the proceedings, whether imprisoned or admitted to bail. *Mullen* v. *State,* 21 Okl. Cr. R.——, 230 Pac. 285.

"The statute provides that where it appears that the defendant has no means and is unable to employ counsel, the court shall in all such cases appoint counsel to represent him. Section 2929, C. S. 1921. There can be little doubt, under the facts in this case, that the defendant was denied the right to be heard by counsel as guaranteed by the letter and the spirit of our state Constitution. There is nothing to show that the defendant waived this right. At the time he was brought before the court and arraigned, he had been given no opportunity to be advised by counsel as to his rights, or as to the consequences of any plea he might enter. The judge of the court asked him if he desired to have a lawyer, but the court did not tell

him that he had a right to have an attorney, and the court did not inquire as to what means the defendant possessed by which he could employ a lawyer, and did not inform him that it was the duty of the court to appoint an attorney to appear for him in case he possessed no means to employ one. And the court did not direct any officer of the court to call a lawyer to consult with him, and made no offer to appoint an attorney for that purpose.

'' [8] Under the facts stated, the defendant cannot be held to have waived his constitutional right to be heard by counsel. If the defendant had been permitted to consult with counsel learned in the law before he was arraigned, he would have been informed as to his constitutional and statutory rights, and he would have been informed that he had a right to be tried by a jury of 12 men, whose duty it would be to decide the question of his guilt; that in case he was tried by a jury and found guilty of murder, the jury in its discretion would have the right to decide whether the penalty to be imposed should be death or imprisonment for life. He would have been told that he could not be required to give evidence against himself either as tending to show that he was guilty of the offense charged or as tending to show any aggravating circumstances to be considered in fixing his punishment. He would have been informed, also, that in case he pleaded guilty, such plea would be a judicial confession that he was guilty of murder and a waiver of his r'ght to a trial by jury, and that the court would be authorized on that plea to find him guilty of murder without hearing other evidence. *Mullen* v. *State,* supra.

''Under the facts in this case, the court had no right to assume that the defendant was fully advised as to his rights, and as to the consequences of a plea of guilty. The defendant was young, ignorant, and inexperienced. Under such circumstances, the court was required to use caution in proportion to the gravity of the consequences.

'' ✲          ✲          ✲          ✲          ✲          ✲          ✲

''It may be well to say here that it is as much the duty of prosecuting attorneys to see that a person on trial is not deprived of any of his constitutional rights, as it is to prosecute him for the crime with which he is charged.''

For these reasons, it can be seen clearly that the Oklahoma Court has given to the *Johnson* v. *Zerbst* decision the same interpretation and scope that we gave it in *Ex parte Hernández.*

The commentators of our decision in the latter case, have been somewhat alarmed by the thought that the doors of the Penitentiary would be opened wide to release thousands of criminals. In reality there is no reason to be thus alarmed. Of the forty-four convicts released since we rendered our decision in *Ex parte Hernández,* the greater part had already served the term required to apply for freedom on parole and could have obtained it through an Executive Order, without recurring to the courts. But, even though the number of convicts released were much greater, we would still maintain that it is better to open the gates of the Penitentiary to all those there confined who, although guilty, were illegally tried and sentenced, than keep them shut for one only, who being innocent, has yet been sentenced in violation of his constitutional rights and without due process of law.

Since the record of this case does not reveal that the defendant, here petitioner, waived freely and voluntarily his constitutional right to be represented by counsel in all the stages of the criminal action followed against him, nor that he was informed in some way of the existence of said right, and the court not having appointed or offered to appoint him a lawyer, we are of the opinion that it cannot be maintained that the defendant waived intelligently and competently his constitutional rights.

Dealing as we are with a petition of habeas corpus filed originally in this Supreme Court and not with a case originating in a district court and brought here through an appeal or a writ of certiorari, the only thing that can be done is to grant or deny the petition. And considering that there exist more than enough reasons to grant the petition, issue the writ and decree the release of the petitioner, we so decide.